UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CONTINENTAL DATALABEL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | 09 C 5980 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| AVERY DENNISON CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Continental Datalabel, Inc., and Defendant Avery Dennison Corporation are competing manufacturers of self-adhesive address labels. Continental filed this suit against Avery in September 2009, alleging that Avery infringed Continental's patents in violation of federal patent law, engaged in unfair competition through false or misleading advertising in violation of the Lanham Act, and tortiously interfered with Continental's efforts to sell its labels to office supply retailers Staples and Office Depot in violation of Illinois law. In March 2010, the court stayed the patent claims pending a reexamination of Continental's patents by the U.S. Patent and Trademark Office ("USPTO"). Doc. 43 (Shadur, J.). Two years later, the parties cross-moved for summary judgment on the Lanham Act and tortious interference claims. Docs. 118, 132, 189. The court granted Avery's motion and denied Continental's motions. Docs. 269, 273; 2012 WL 5467667 (N.D. Ill. Nov. 9, 2012).

Because the court disposed of the Lanham Act and tortious interference claims, and because the patent claims are stayed pending the USPTO's reexamination proceedings, the court requested the parties' views on whether it should enter a partial final judgment on the resolved

claims under Federal Rule of Civil Procedure 54(b). Doc. 269. The parties have staked out different positions. Doc. 271. Avery urges the court to enter a Rule 54(b) judgment on the tortious interference and Lanham Act claims immediately, while Continental argues that "immediate entry of a Rule 54(b) judgment would be premature, but should be revisited in three to six months." *Id*. at 2. For the following reasons, the court finds that there is no just reason for delay and that a Rule 54(b) judgment should be entered forthwith.

As relevant here, Rule 54(b) provides as follows:

> **(b) Judgment on Multiple Claims or Involving Multiple Parties.**
>
> When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.

Fed. R. Civ. P. 54(b). "A proper Rule 54(b) order requires the district court to make two determinations: (1) that the order in question was truly a 'final judgment,' and (2) that there is no just reason to delay the appeal of the claim that was 'finally' decided." *Gen. Ins. Co. of Am. v. Clark Mall Corp.*, 644 F.3d 375, 379 (7th Cir. 2011); *see also W.L. Gore & Assocs., Inc. v. Int'l Med. Prosthetics Research Assocs., Inc.*, 975 F.2d 858, 861-62 (Fed. Cir. 1992).

The Supreme Court has described the first step as follows:

> A district court must first determine that it is dealing with a "final judgment." It must be a "judgment" in the sense that it is a decision upon a cognizable claim for relief, and it must be "final" in the sense that it is "an ultimate disposition of an individual claim entered in the course of a multiple claims action."

*Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7 (1980) (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 436 (1956)). The court's grant of summary judgment to Avery on the Lanham Act and tortious interference claims is a "judgment" that is "final": it is a decision upon

two cognizable claims for relief and is an ultimate disposition of those claims—one that leaves nothing further for this court to do with them—and the stayed patent claims remain pending.

At the second step of the Rule 54(b) analysis, the district court must determine whether there is "no just reason for delay" by weighing the equities and judicial efficiency:

> Once having found finality, the district court must go on to determine whether there is any just reason for delay. … It is left to the sound judicial discretion of the district court to determine the "appropriate time" when each final decision in a multiple claims action is ready for appeal. This discretion is to be exercised "in the interest of sound judicial administration."
>
> Thus, in deciding whether there are no just reasons to delay the appeal of individual final judgments in a setting such as this, a district court must take into account judicial administrative interests as well as the equities involved. Consideration of the former is necessary to assure that application of the Rule effectively "preserves the historic federal policy against piecemeal appeals." It was therefore proper for the District Judge here to consider such factors as whether the claims under review were separable from the others remaining to be adjudicated and whether the nature of the claims already determined was such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals.

*Curtiss-Wright Corp.*, 446 U.S. at 8 (quoting *Sears, Roebuck & Co.*, 351 U.S. at 435, 437-38). Judicial efficiency and the equities favor the immediate entry of a Rule 54(b) judgment on the Lanham Act and tortious interference claims, not the delay of such a judgment.

The parties agree that there is "complete severability (lack of overlap) in *legal* issues between the false advertising and tortious interference counts, on the one hand, and the patent infringement counts on the other hand." Doc. 271 at 2 (emphasis added). Continental does argue, over Avery's objection, that there is a potential for some *factual* overlap between the resolved claims and the patent claims, raising the possibility that, if the court grants a Rule 54(b) judgment on the Lanham Act and tortious interference claims and Continental appeals, and if the

patent claims are ultimately decided on the merits and the losing party appeals from that decision, the court of appeals might have to revisit some of the factual material from the first appeal in considering the second appeal. This argument greatly exaggerates the potential for factual overlap.

Continental first suggests that "[t]he false advertising count [under the Lanham Act] and two of the patent infringement counts focus, in large part, on the technical features of Avery's Easy Peel labels and Continental's Fastply and FAB labels." Doc. 271 at 2. It is true that Continental, to succeed on the Lanham Act claim, must establish that its products were technically similar to Avery's, and it is equally true that the technical details of Avery's patents are relevant also to Continental's patent claims. But it is unlikely that the court of appeals will have to consider those technical issues in reviewing an appeal from the entry of summary judgment on the Lanham Act claim. The reason is that Continental has presented sufficient evidence for a jury to find that its products were similar to Avery's, and so the court assumed on summary judgment that they were indeed similar. 2012 WL 5467667, at *2 ("For purposes of resolving Avery's summary judgment motion, the court will credit the expert's conclusion and assume that Continental's labels, like Avery's, possessed the pop-up feature."). The court held that Continental's claim failed on a completely separate ground, that the record would not permit a reasonable jury to find that Avery's accused statements were false or misleading. *Id*. at *3-7.

It is possible that the court of appeals could disagree with this court's view that Continental had established for summary judgment purposes that its products possessed the same features as Avery's, and also with this court's determination that Avery's statements were not misleading. If this happens, the appeals court could affirm summary judgment for Avery on an alternative ground: that the Avery statements were not false or misleading because the

Continental products did not have the same attributes as the Avery products. And if the patent claims are eventually litigated to judgment and the losing party appeals, the court of appeals might have to confront the technical aspects of the Avery products a second time.

This sequence of events, while possible, is highly unlikely. The bare possibility that the court of appeals might have to cover the same factual ground twice on successive appeals does not make improper the entry of a Rule 54(b) judgment. *Curtiss-Wright* says as much:

> We do not suggest that the presence of one of these factors [including the possibility that the "appellate court would have to decide the same issues more than once" if a subsequent appeal occurred] would necessarily mean that Rule 54(b) certification would be improper. It would, however, require the district court to find a sufficiently important reason for nonetheless granting certification. For example, if the district court concluded that there was a possibility that an appellate court would have to face the same issues on a subsequent appeal, this might perhaps be offset by a finding that an appellate resolution of the certified claims would facilitate a settlement of the remainder of the claims.

446 U.S. at 8 n. 2; *see also Carotek, Inc. v. Kobayashi Ventures, LLC*, 409 F. App'x 329, 331 (Fed. Cir. 2010) (even where the appellate court "will likely have to decide multiple appeals with the potential of overlapping factual and perhaps legal issues," "such potential does not necessarily negate proper Rule 54(b) certification when the district court provides a sufficiently important reason for doing so"); *Lawyers Title Ins. Corp. v. Dearborn Title Corp.*, 118 F.3d 1157, 1163 (7th Cir. 1997) ("some overlap between the facts in the retained and the appealed claims is not fatal"); *W.L. Gore*, 975 F.2d at 864 ("factual overlap on only tangential issues or on 'one aspect' of a counterclaim is not adequate to show an abuse of discretion").

Continental next asserts that "[t]here is also possible overlap in damages which, for all counts, depend on sales and profits made by Avery and/or lost by Continental." Doc. 271 at 2. Again, such factual overlap is possible, but highly unlikely. Although Avery argued as one

ground for summary judgment on the Lanham Act and tortious interference claims that Continental had not suffered damages, the court granted summary judgment on other grounds and did not reach the issue of damages. It is not inconceivable that the court of appeals would consider damages in resolving Continental's appeal, but the possibility is remote.

On the other side of the judicial efficiency balance is the fact, acknowledged by Continental, that "there is some risk that fact witnesses and expert witnesses whose testimony is important to the false advertising and tortious interference claims will become unavailable in the long run." Doc. 271 at 2. We are already very near the long run; the USPTO's reexamination proceedings have been ongoing for about three years. Because there is no definite end in sight, the possibility of a witness's becoming unavailable before the Lanham Act and tortious interference claims could be tried (if the court of appeals reverses the entry of summary judgment on those claims) is not a trivial one. This consideration strongly supports entry of a Rule 54(b) judgment.

The equities support entry a Rule 54(b) judgment as well. This case was filed more than three years ago, and the first of the USPTO reexamination proceedings for the patents-in-suit was commenced soon thereafter, in December 2009. There is no way of knowing when the reexamination proceedings will conclude and the patent claims will be ready to move forward. Continental does not contend otherwise, saying only that it "will soon know whether the reexamination proceedings are near conclusion, or whether they are likely to require substantially more time to conclude." Doc. 271 at 6. While the status of the patent claims remains uncertain, Avery has defeated Continental's Lanham Act and tortious interference claims on the merits before this court. The amount of money at stake in those two claims is substantial, even for a large firm like Avery; Continental's expert opined that "Avery was

unjustly enriched by $35.2 million due to its [alleged] false advertising." Doc. 237 at ¶ 109. Having prevailed on those claims, Avery should be allowed to proceed toward a final disposition of them, whether through an appeal by Continental or Continental's decision to forego an appeal. It would be inequitable to force Avery to endure the uncertain status of its victory on those claims—a form of financial uncertainty that could detrimentally affect Avery's planning and business transactions—until the perhaps very distant date at which the patent claims can at last be adjudicated. The prevailing party's financial interests are pertinent to the Rule 54(b) analysis, and here support entry of a Rule 54(b) judgment. *See Curtiss-Wright Corp.*, 446 U.S. at 11-12; *Bank of Lincolnwood v. Fed. Leasing, Inc.*, 622 F.2d 944, 951 (7th Cir. 1980). By contrast, Continental does not assert that it would be harmed by entry of a Rule 54(b) judgment, and the court cannot see how it might be.

    The court thus finds that there is no just reason for delay and that a Rule 54(b) final judgment should be entered on Continental's Lanham Act and tortious interference claims.

December 7, 2012                                                   United States District Judge